WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Derrick Allen,<br><br>    Plaintiff,<br><br>v.<br><br>Country Mutual Insurance Company, Inc., a foreign corporation dba Country Mutual Insurance Company dba Country Financial; et al.,<br><br>    Defendants. | No. CV-13-01015-PHX-GMS<br><br>**ORDER** |

Pending before this Court is Defendant's Motion to Dismiss (Doc. 9) which this Court converted to a motion for summary judgment (Doc. 16). Pursuant to that change, the parties filed supplemental briefing. (Docs. 17–23.) For the following reasons, the Motion is granted without prejudice to Allen re-filing his claim upon compliance with the terms of his insurance policy.

**BACKGROUND**

Plaintiff Derrick Allen alleges bad faith against his insurance company, Defendant Country Mutual Insurance Company, Inc. ("Country Mutual"), in their handling of his claim based on the theft of his two motorcycles and motorcycle trailer. (Doc. 1-1.) The theft occurred on November 2, 2012, and there is no dispute that the motorcycles and trailer were covered under Allen's policy with Country Mutual. (Doc. 17 at 1–2; Doc. 18 at 2.) Allen reported the theft to the police and Country Mutual that day. (Doc. 18 at 2.)

There is a dispute as to the value of the motorcycles. Allen states in his declaration

1 that before insuring the motorcycles, Country Mutual had an underwriter evaluate them and determined that they were of "show quality" and that each had a market value of $55,000. (Doc. 19 at 7.) Country Mutual ignores this allegation and points to other indicators of the motorcycles' value, such as their initial purchase prices of $10,000 and $23,000. (Doc. 17 at 2.) Country Mutual hired an appraiser after the theft, who appears to have determined that they were worth $32,815.05 and $24,148.75 respectively. (*Id.* at 5.)

On December 5, Country Mutual sent Allen a letter requesting documentation to verify improvements made to the motorcycles and trailer. (Doc. 17, Ex. G.) Five days later, Country Mutual sent a Notice of Reservation of Rights regarding each motorcycle. (*Id.*, Ex. H.) In those notices, Country Mutual informed Allen that his claim may not be covered and generally cited various sections of his policy, but did not cite any specific problems or concern. (*Id.*) On the same day it sent these notices that the claims may not be covered at all, Country Mutual also sent two Automobile Proof of Loss statements for Allen to sign which listed the values of the motorcycles as $32,815.05 and $24,148.75. (*Id.*, Ex. I.) These forms included a place for Allen to sign whereby he was acknowledging receipt of the payment of those amounts as the contractual obligation. (*Id.*)

Allen acquired representation by an attorney, who sent a demand letter on January 16, 2013, asking for payment of the alleged full value of $55,000 per motorcycle by February 1. (*Id.*, at Ex. J.) For the next several months, Allen's attorney exchanged multiple emails and letters with Country Mutual. (*Id.*, Exs. J–X.) On January 21, Country Mutual asked the attorney to have Allen complete an Automobile Proof of Loss, which he did on March 19. (Doc. 17–1, at 6–7.) On March 7, Country Mutual received a National Insurance Crime Bureau Hotline Tip indicating that an anonymous caller felt that Allen was fraudulently reporting his motorcycles as stolen. (Doc. 71, Ex. M.) On March 28, the attorney for Country Mutual contacted Allen's attorney to request and schedule an Examination Under Oath ("EUO") pursuant to the terms of his policy. (*Id.*, Ex. O.)

1   On April 8, over five months from the time of the theft, Allen filed the present suit in Maricopa County. (*Id.*, Exs. P–U; Doc. 1-1, at 3–7.) Allen's counsel asserted that Allen could comply with the policy's EUO requirement by submitting to a deposition during the course of this bad faith lawsuit. (Doc. 17, Ex. R.) Country Mutual then removed the case to this court (Doc. 1) and made the Motion to Dismiss (Doc. 9). Briefing is now complete on the converted motion to dismiss which will now be addressed as a motion for summary judgment. (Docs. 17–23.)

**DISCUSSION**

**I.   LEGAL STANDARD**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts

1 showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec.*
2 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose*
3 *Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).

4 When a summary judgment motion is filed "before a party has had any realistic
5 opportunity to pursue discovery relating to its theory of the case, district courts should
6 grant any Rule [56(d), formerly] 56(f) motion fairly freely." *Burlington N. Santa Fe R.*
7 *Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir.
8 2003). However, the burden is on the nonmoving party to show "by affidavit or
9 declaration that, for specified reasons, it cannot present facts essential to justify its
10 opposition." Fed. R. Civ. P. 56(d); *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998).
11 The request to defer consideration must "clearly show 'what information is sought and
12 how it would preclude summary judgment.'" *Spear v. United States*, No. CIV. 11–1742–
13 PHX–PGR, 2012 WL 2029747, at *2 (D. Ariz. June 6, 2012) (citing Margolis, 140 F.3d
14 at 853). More specifically, the nonmoving party must set forth in affidavit form the
15 specific facts it hopes to elicit from further discovery and show that these facts are
16 essential to overcoming summary judgment. *Family Home & Fin. Ctr., Inc. v. Fed. Home*
17 *Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

18 **II. ANALYSIS**

19 Allen's complaint asserts a single claim of bad faith and prays for judgment for
20 breach of contract and bad faith. Country Mutual asks for summary judgment on the
21 claim for bad faith or breach of contract because it alleges that Allen was contractually
22 prohibited from bringing this suit until Allen complied with its request for an EUO.
23 Country Mutual points to the provision in its policy contract which provides that "[n]o
24 suit or action for recovery of any claim may be brought against us until the insured has
25 fully complied with all the terms of this policy." (Doc 17, Ex. A ("Auto Insurance
26 Policy") §4, Conditions, 8.) The only term of the policy with which Allen has not
27 complied is the request for an EUO. The EUO provision in the contract requires that the
28 insured party making a claim must "submit to an [EUO] as often as [Country Mutual]

1 reasonably require[s]." Allen argues that the reasonableness of Country Mutual's request in light of its actions should be a question of fact for the jury. But the Ninth Circuit has rejected that argument and held that a court may determine reasonableness as a matter of law in the context of an insurance company's request for an EUO. *West v. State Farm Fire & Cas. Co.*, 868 F.2d 348, 351 (9th Cir. 1989) ("reasonableness becomes a question of law appropriate for determination on motion for summary judgment when only one conclusion about the conduct's reasonableness is possible").

Here, Country Mutual did not ask for an EUO until March 28. Nevertheless, the EUO was permissible if reasonable and an EUO would be reasonable given the high dollar amount of the claim even without the existence of the tip that fraud might be involved. It is also reasonable for Country Mutual to wait until it had the signed Proof of Loss statements before requesting the EUO. Country Mutual permissibly asked Allen to submit to an EUO, and that occurred before Allen filed his suit against Country Mutual.

The parties have the right to contractually agree to an EUO as one of the terms of their contract, and insurers have been including such provisions as a condition of coverage for years. *Warrilow v. Superior Court of State of Ariz. In & For Pima Cnty.*, 142 Ariz. 250, 253, 689 P.2d 193, 196 (Ct. App. 1984). "[T]he law is well settled that a failure or refusal of the insured to comply with his obligation of cooperation under such a[n EUO] provision will constitute a bar to any recovery against the insurance company." *Id.* In *Warrilow*, the insured refused to answer certain question during his EUO and later brought a suit against his insurer. *Id.* at 252–53, 689 P.2d at 194–95. The court found that a motion for summary judgment should have been granted because the refusal "constituted a breach of the terms of the insurance contract which, as a matter of law, bars any recovery on his claim." *Id.* at 255, 689 P.2d at 198.

Allen argues that he should be allowed to proceed with this suit because Country Mutual denied or refused his claim. *See U.S. Fid. & Guar. Co. v. Powercraft Homes, Inc.*, 141 Ariz. 71, 75, 685 P.2d 136, 140 (Ct. App. 1984) (recognizing an implied waiver of the need for compliance with insurance company's requests after a denial of coverage).

1  Allen provides, however, no facts from which a reasonable jury could conclude that
2  Country Mutual has yet actually denied his claim, and merely repeating the assertion that
3  it has done so does not take the place of admissible evidence. There was no actual denial
4  here because neither the Reservation of Rights nor the failure to meet the demanded
5  payout date set by Allen's attorney constituted a denial. In fact Country Mutual was still
6  investigating the claim, as evidenced by its continued demands for the Proof of Loss
7  statements and the eventual demand for an EUO. Allen appears to be making an
8  argument that the claims were constructively or effectively denied by Country Mutual's
9  course of conduct. But the case Allen cites makes it clear that the implied waiver "rule
10 requires only that the insurer communicate to the insured its intent not to pay the claim."
11 *Id.* Here, Country Mutual never communicated its intent not to pay and its investigation
12 of the claim did not imply an intent not to pay.

13 Allen's request to defer consideration of this motion under Rule 56(d) is denied
14 because the facts he cites would not preclude summary judgment. Specifically, Allen
15 wants to discover more about the anonymous tip to the National Insurance Crime Bureau
16 and the underwriting process before insuring the motorcycles. As just noted, the request
17 for an EUO would have been reasonable even without a tip. The information surrounding
18 the tip would not change the determination in this case that Allen needed to comply with
19 the EUO request before bringing suit.

20 Allen's uncontroverted allegation that Country Mutual already determined the
21 value of the motorcycles before issuing the policy will, if proved, likely play a role in
22 establishing the amount of the covered loss in this case, and possibly bear on his claim
23 for bad faith. However, it does not prevent the grant of summary judgment at this time.
24 Summary judgment is not granted on the merits of the claim but, rather, on the
25 contractual limitations on the timing of filing this suit. That the Court grants summary
26 judgment, therefore, does not, in and of itself, prevent Allen from re-filing his claim upon
27 compliance with the terms of his policy.

28

1    **IT IS HEREBY ORDERED** that Defendant's Motion for Dismiss as converted
2  to a motion for summary judgment (Doc. 9) is **granted** without prejudice to Allen re-
3  filing this action upon his compliance with the terms of his contract**.**
4    **IT IS FURTHER ORDER** that the Clerk terminate this action.
5    Dated this 31st day of December, 2013.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge